NOT PRECEDENTIAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SONAL SHAH,** <br><br> **Plaintiff,** <br><br> v. <br><br> **JOHN THOMPSON, Newark District Director, United States Citizenship and Immigration Services; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,** <br><br> **Defendants.** | Civ. No. 2:11-3082 (WJM) <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Pursuant to the Immigration & Nationality Act of 1952, Sonal Shah ("Sonal") requests that this Court overturn a decision by the United States Citizenship and Immigrant Services ("UCIS") denying her application for naturalization. This matter comes before the Court on Defendants' motion for summary judgment and Sonal's cross-motion for summary judgment. The motions both concern whether Sonal was lawfully admitted for permanent residence before she applied for naturalization. If she was not lawfully admitted as a permanent resident, the Court must uphold the decision denying her application for naturalization. Pursuant to FED. R. CIV. P. 78 no oral argument was heard. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**, and Sonal's cross-motion for summary judgment is **DENIED**. Judgment will be entered in favor of Defendants.

I.  BACKGROUND

Except where otherwise noted, the following facts are undisputed. Sonal is a native and citizen of India, who current resides in Edison, New Jersey. (Complt. at ¶ 3). On June 30, 1995, Sonal and her husband Sejal entered the United States on B-2 non-immigrant visas, which authorized them to remain in the country until December 29, 1995. (Def's

1

Statement of Material Facts (SOMF) at ¶ 2). Despite being authorized to stay in the United States until only December 29, 1995, Sonal and Sejal remained in the country until they subsequently departed for Canada on November 26, 2000. (Def's SOMF at ¶4). "Sometime in late 2000 or early 2001," Sonal and Sejal decided to return the United States. (Def's SOMF at ¶5). Sonal states that during this period, there was a policy known as the "Commonwealth Rule" in place for citizens of British Commonwealth countries, including India. (Plf's SOMF at ¶4). Sonal further contends that under the Commonwealth Rule, she and her husband were entitled to reenter the United States from Canada without a valid United States visa. (*Id.*) However, when the couple first attempted reentry to the United States, they were denied by an officer who was "not familiar with the 'Commonwealth Rule.'" (*Id.* at ¶5). The parties dispute the nature of this encounter at the border, but both agree that Sonal and Sejal were in Canada during this time period. Despite being denied initially, Sonal and Sejal were eventually able to return to the United States. (*Id.* at ¶6).

On or about July 1, 2001, Sonal filed an application to adjust her status to that of a permanent resident, which was supported by an approved visa petition filed by her then-employer. (Def's SOMF at ¶6). In connection with her application for adjustment, Sonal paid $1,000 for a waiver of inadmissibility under section 1255(i) (also known as a 245(i) waiver). Shortly after Sonal applied, Sejal also filed for an adjustment as the derivative beneficiary of Sonal's application. (Def's SOMF at ¶7). Sonal's application for an adjustment included documents in her file "with respect to [her] departure from the United States [to Canada] while not in valid immigration status and her return to the United States." (Plf's SOMF at ¶7). Notwithstanding that fact, in May 2002 INS approved Sonal and Sejal's applications for permanent residency.

In May 2010, Sonal applied to naturalize as a United States citizen. (Def's SOMF at ¶8).[1] On October 29, 2010, USCIS denied Sonal's application for naturalization for two reasons: (1) Sonal was never lawfully admitted for permanent residence; and (2) Sonal demonstrated poor moral character when she answered "No" after initially being asked whether she had left the United States Between June 30, 1995 and May 24, 2002. (Def's SOMF, Ex. 2). In February 2011, USCIS denied Sonal's administrative appeal of the decision rejecting her naturalization application. (Def's SOMF, Ex. 3).

Sonal filed the instant action in May of 2011. *See* ECF No. 1. In February 2012, Sonal moved for summary judgment on the issue of whether USCIS was correct in finding that Sonal lacked good moral character. Concluding that there was a genuine issue of material fact regarding whether Sonal lied during her naturalization interview, the Court denied the motion for summary judgment. ECF No. 14.

---

[1] Sejal had previously applied for naturalization and became a United States citizen without incident. (Plf's SOMF at ¶9).

Now both parties have moved for summary judgment on USCIS' other basis for denying Sonal's application for naturalization—namely, whether Sonal was lawfully admitted for permanent residence before submitting her application. If Sonal was not lawfully admitted for permanent residence, the Court must uphold the USCIS decision denying her application for naturalization. If she was lawfully admitted for permanent residence, the case must proceed on the issue of whether USCIS correctly determined that Sonal lacked good moral character.

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standard

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

An applicant seeking review of a naturalization denial bears the burden of establishing that he or she is entitled to naturalization. *See Berenyi v. District Director, INS*, 385 U.S. 630, 636-37 (1967). The applicant must demonstrate that he or she meets each statutory requirement for becoming a naturalized citizen. *Id.* at 637. Additionally, "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).

### B.  Requirements for Naturalization

The requirements for naturalization are governed by federal statute. One requirement provides that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable

provisions of this chapter." 8 U.S.C. § 1429.  Moreover, an individual is eligible for naturalization only if "immediately preceding the date of filing his application for naturalization[, he] has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years…." 8 U.S.C. § 1427.

To be "lawfully admitted for permanent residence" is to possess "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigrations laws, such status not having changed." 8 U.S.C. § 1101(a)(20). Aliens who are successful in obtaining permanent resident status are not necessarily "lawfully admitted for permanent residence" as the term is defined in the immigration laws. This is because "[t]he term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity…." *Gallimore v. Attorney General*, 619 F.3d 216 (3d Cir. 2010) (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)). Interpreting Board of Immigration Appeals (BIA) decisions, the Third Circuit has held that this principle applies not only where an applicant obtained permanent residence by fraud, but also where he or she had otherwise not been entitled to it. *See Gallimore*, 619 F.3d at 224-25 (citing *In re Koloamatangi*, 23 I. & N. Dec. 548, 551 (BIA 2003)). Therefore, an alien who obtains permanent residence through administrative oversight or other agency error is not lawfully admitted for permanent residence. *See id*; see also *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1317 (11th Cir. 2006) ("lawfully admitted" requirement applies with equal force to situations involving "administrative inadvertence or error.")

### C. Sonal's Application

Defendants contend that USCIS properly denied Sonal's application for naturalization because she was not lawfully admitted for permanent residence. Applying the principles laid out in the foregoing section, this Court agrees. An alien is not entitled to permanent legal residence if she was "unlawfully present in the United States for one year or more, and [] again seeks admission within 10 years of the date of such alien's departure or removal from the United States." 8 U.S.C. § 1182(a)(9)(B)(i)(II). An alien is "unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." 8 U.S.C. 1882(a)(9)(B)(ii). Moreover, a "departure" for the purposes of the statute includes both voluntary and involuntary exits from the United States. *In re Lemus-Losa*, 24 I. & N. Dec. 373, 376 (BIA 2007).

In this case, Sonal entered the United States on June 30, 1995 and was authorized to remain in the Country until December 29, 1995. (Def's SOMF at ¶3). However, Sonal remained in the United States until she voluntarily left for Canada on November 26, 2000. Given these facts, it is indisputable that within 10 years of July 1, 2001 – the approximate date when Sonal applied for permanent residence – she departed the United States after being unlawfully present in the United States for more than one year. Therefore, despite

4

obtaining permanent resident status, Sonal did not meet the substantive legal requirements for being lawfully admitted as a permanent resident. *See Gallimore*, 619 F.3d at 224-25 ("an alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been lawfully admitted for permanent residence" (quoting *De La Rosa v. DHS*, 489 F.3d 551, 554 (2d Cir. 2007))). Under the plain language of the immigration laws, she is consequently not eligible for naturalization. Sonal nonetheless contends that a number of factors preclude application of this rule to her case. The Court will now address these arguments.

Sonal primarily relies on the BIA decision *In re Ayala*, 22 I. & N. Dec. 398 (BIA 1998). The respondent in that case – who previously obtained permanent resident status – sought to avoid deportation by obtaining a Section 212(h) waiver. Section 212(h) waivers, however, are not available to certain aliens who have "previously been admitted to the United States as [aliens] lawfully admitted for permanent residence." INA § 212(h), 8 U.S.C. § 1182(h). The respondent nonetheless argued that he was eligible for a waiver because he concealed criminal activity while applying for an adjustment and was therefore never lawfully admitted as a permanent resident. The BIA rejected this theory and concluded that the respondent was ineligible for a waiver. Sonal points to *In re Ayala* in support of her position that an alien can be lawfully admitted as a permanent resident even if he or she does not meet the substantive requirements for obtaining an adjustment. This argument must fail because Section 212(h) applies to all aliens who have "previously been admitted" as aliens lawfully admitted for permanent residence. As *In re Ayala* pointed out, the "previously been admitted" language – which is conspicuously absent from the naturalization statutes at issue here – indicates that Section 212(h) does not distinguish between aliens whose admission was lawful and those who obtained admission unlawfully; rather, its sole concern is whether an alien has been admitted, period. The same cannot be said for the naturalization statutes that govern the outcome of this matter, making Sonal's reliance on *In re Ayala* misplaced. *See Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1315 (11th Cir. 2006) ("*Ayala*[] does not apply to [this] situation because it focused on whether the alien had 'previously been admitted' for permanent residence, not whether he had been 'lawfully admitted for permanent residence'"); *In re Ayala*, 22 I. & N. Dec. at 401.[2]

---

[2] Sonal has filed a reply brief in support of her cross motion notwithstanding the fact that such submissions are not authorized by the Local Rules. The Court has nonetheless reviewed the case law offered in Sonal's reply and concludes that *In re Ayala* is inapplicable here. Most notably, both *Hanif v. U.S. Atty. Gen.*, 694 F.3d 479, 484 (3d Cir. 2012) and *Lanier v. U.S. Atty. Gen.*, 631 F.3d 1363 (11th Cir. 2011) stand for the unremarkable proposition that an alien who enters the country illegally and later obtains an adjustment has not been *admitted* to this country as an alien lawfully admitted for permanent residence. Those cases do not undermine the premise that an alien is lawfully admitted for permanent residence only if he or she meets the procedural and substantive requirements for an adjustment.

Sonal also contends that *Garcia v. U.S. Atty. Gen.*, 553 F.3d 724 (2009) entitles her to a finding that she is eligible for naturalization. *Garcia* provides that the Government is not authorized to commence deportation proceedings against an alien or rescind that alien's permanent resident status five years after the alien obtained an adjustment, even if that adjustment was obtained fraudulently.[3] It does not, however, disturb the well-settled principle that the "lawfully admitted for permanent residence" requirement is not met when an alien's adjustment does not comply with the immigration laws. *See Gallimore*, 619 F.3d at 224-25 (citing *In re Koloamatangi*, 23 I. & N. Dec. 548, 551 (BIA 2003)).

Sonal further argues that the adjuster who granted her permanent resident status may have determined that her departure from the United States did not pose an obstacle to lawful permanent resident status because Sonal applied for an adjustment with a 245(i) waiver. However, the BIA has reasonably concluded that a 245(i) waiver does not afford relief to an alien who is otherwise inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i)(II). *See Lemus-Losa*, 24 I. & N. Dec. 373, 379-80 (BIA 2007) (finding that 245(i) does not cure inadmissibility under § 1882(a)(9)(B)(i)(II)); *Cheruku v. U.S. Atty. Gen.*, 662 F3d 198 (3d Cir. 2011) (concluding that the BIA's interpretation in *Lemus-Losa* is reasonable). Sonal similarly argues that the adjuster may have believed that she had the power to grant a waiver under 8 U.S.C. § 1182(a)(9)(B)(v), which permits the Attorney General to lawfully admit an alien for permanent residence if the alien, among other things, has a spouse who is already lawfully admitted. Sonal tacitly concedes that this waiver was unavailable to her because her husband was her derivative beneficiary and thus could not have obtained permanent resident status before she did. Even if the adjuster had the mistaken view that the waiver was available to Sonal, agency error does not permit an exception to the rule that an alien is lawfully admitted for permanent residence only if she meets the substantive requirements for an adjustment. *See e.g., Gallimore*, 619 F.3d at 224; *Savoury*, 449 F.3d at 1316-1317.[4]

---

[3] Defendants are not seeking to initiate deportation proceedings against Sonal or rescind her permanent resident status.

[4] This principle also defeats Sonal's argument that her naturalization application should have been granted because Sejal's application was approved without incident.

### III.  CONCLUSION

Because Sonal was unlawfully present in the United States for one year or more and subsequently sought admission within 10 years of her departure to Canada, she was not "lawfully admitted for permanent legal residence" as defined in the immigration laws; and because Sonal was not "lawfully admitted for permanent legal residence," she is not eligible for naturalization.  Defendants' motion for summary judgment is therefore **GRANTED** and Sonal's cross-motion for summary judgment is **DENIED**.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 8th, 2015**